## J. L. MOORE, Respondent, v. DAY RUBBER COMPANY, Appellant.

Kansas City Court of Appeals, May 17, 1909.

SALE: Warranty: Evidence: False Representations. Defendant's agent called upon plaintiff offering to sell him belting for his mill, and representing that it was as good as any in the district. The plaintiff visited the defendant's house, when no such representations were made, and bought a second class article at a second class price. He subsequently brought suit for false representations. *Held*: On the evidence he was not entitled to recover, because the alleged representations did not purport to refer to the grade of belting bought by the plaintiff, and there was therefore no misrepresentation; and besides he knew the goods he bought were not of the first grade and consequently did not rely upon the representation.

Appeal from Jasper Circuit Court.—*Hon. Hugh C. Dabbs,* Judge.

REVERSED.

*McIndoe & Thurman* for appellant.

(1) An expression of value or an expression of opinion does not amount to or constitute a warranty. Anderson v. McPike, 86 Mo. 292; Kerr v. Emerson, 64 Mo. App. 129. (2) In this case there was no word of warranty or guaranty used. Carter v. Black, 46 Mo. 531; Gilbreath v. Carns, 91 Mo. App. 516; Sumner v. Rogers, 90 Mo. 333; Lindsay v. Davis, 30 Mo. 410; Anderson v. McPike, 86 Mo. 292; Kerr v. Emerson, 64 Mo. App. 129. (3) Respondent pleads an express warranty. Where an express warranty is pleaded, such warranty governs the liability to the exclusion of the implied warranty. Hainer v. Churchill, 29 Mo. App. 676; Fairbanks, Morse & Co. v. Basket, 98 Mo. App. 69. (4) Respondent's petition shows that he purchased King Jack belt and there is no implied warranty that it was fit for use. Fairbanks, Morse & Co. v. Basket,

98 Mo. App. 69; Hainer v. Churchill, 29 Mo. App. 667; Chalise v. Witt, 81 Mo. App. 84. (5) The court erred in refusing to allow Day and Jones to testify to the various grades of belts in the house, and the quotations of prices, and the difference in per cent of the prices of the various grades of belt. All the surrounding facts and circumstances of the transaction should have been admitted. 3 Enc. of Evidence, 620.

*Grayston & Graham* and *Perkins & Blair* for respondent.

(1) The court properly refused the demurrer. Whether the representation of a vendor of personal property was intended and relied upon as a warranty and not as a mere expression of opinion is a question for the jury. Galbreath v. Carnes, 91 Mo. App. 512; Charles v. Patch, 87 Mo. 450. (2) Appellant cannot complain of the introduction of evidence as to loss of time, profits, etc., as on that issue the jury found for appellant. (3) Respondent's testimony was ample to sustain the verdict. Consideration of the allegation of warranty as to how long the belting would last was taken from the jury by appellant's instruction numbered 6. The agent who made the sale, although present in court, was not called as a witness by defendant, so that plaintiff's statement as to the warranty stands uncontradicted. (4) A warranty is express when the seller makes an affirmation with respect to the article upon which it is intended that the buyer shall rely in making the purchase. Danforth & Co. v. Crookshanks, 68 Mo. App. 316. (5) Appellant's agent, Tedford, intended that respondent should rely on the representations made in the sale of the belting, and as to Tedford's authority there is no controversy. The testimony shows positively that respondent did rely on such representations, and such representations therefore amount to an express warranty. Childs v. Emerson, 117 Mo. App. 671; Danforth v. Crookshanks, 68 Mo. App. 311; Long

Bros. v. The J. K. Armsby Co., 43 Mo. App. 253; Baker
v. Scudder, 56 Mo. 276; Carter v. Black, 46 Mo. 384.

JOHNSON, J.—Action for damages for breach of
warranty in a contract for the sale of personal property.
The trial resulted in a verdict and judgment for plaintiff
in the sum of $350, and the cause is here on the appeal
of defendant. The property sold was a lot of belting
for a concentrating mill owned and operated by de-
fendant at Galena, Kansas. The contract of sale was
made orally. The belting was of a brand sold by de-
fendant under the trade name of "King Jack" and the
price paid for the lot purchased by plaintiff was $936.90.
It is alleged in the first count of the petition that to
make the sale defendant "then and there warranted and
represented that said rubber belting was made out of
good, first-class material and was as good as any belt-
ing sold in this district, and would last as long as any
belting sold in this district; and that by the term 'this
district' was meant and understood by plaintiff and
defendant to mean the lead and zinc mining district of
Southwest Missouri and Southeastern Kansas, embrac-
ing Jasper and other counties in Missouri and Cherokee
and other counties in Kansas."

Further, it is alleged that plaintiff relied on said
warranty and representations; that the belting was made
out of inferior material; that it would not last as long
as other belting sold in that mining district, and that
when sold was not worth to exceed $296.30. The prayer
is for damages in the sum of $700, the difference between
the contract price and the market value of the goods.
Since the verdict was for defendant on the second count
of the petition, it is not necessary to state the cause
of action pleaded therein. The answer is a general
denial.

Defendant's principal place of business was in St.
Louis, but it maintained a branch house at Joplin. It
handled two grades of belting in the Joplin district

(to which Galena belonged), one, the most expensive and best was known as the "Shield High Grade" and the other, inferior in price and quality was called "King Jack." Plaintiff lived at Carthage and had been interested in mines "more or less for twenty years." Early in the spring of 1906, he began the erection at Galena of a mill "for the purpose of concentrating ore from the mines, rough tailings and sludge, a combination mill." When the time came to buy the rubber belting for this mill, a salesman for defendant called on plaintiff at Carthage and solicited the order. The representations made by this salesman, whose name is Tedford, constitute the warranty plaintiff now seeks to enforce. Plaintiff testified:

"He came two or three times to Carthage to see me about the belt for the mill. I was not familiar with the Day Rubber Company belt, and he told me they were selling as good a belt as was sold in the district, and I talked and asked him if it was as good as the Double Diamond—  .  .  .  He stated that the house was responsible and their belt was as good as any sold in the district, he did not mention any kind of belt. I did not know they had two brands at the time.  .  .  . He mentioned the name of no belt, simply spoke of their belt being first-class and that the house was in Joplin and would stand back of their representations.

"Q. He stated it was first-class in every respect? A. A first-class and as good as any sold in the district."

Plaintiff did not give the order to Tedford, but visited defendant's place of business at Joplin where a stock of belting was kept and succeeded in obtaining a better cash discount than Tedford was authorized to offer. The price quoted him was for "King Jack" and that was the belt delivered to him. He paid the bill promptly, taking advantage of the cash discount offered, and installed the belting in the mill. It did not turn out to be the best belting for the very obvious

reason that it was not the best. It is not claimed by plaintiff that any representations respecting the quality of "King Jack" grade were made to him at the Joplin office, nor does he claim that Tedford said anything to him about the quality or character of that grade. He states that nothing was said to him about the quality of "King Jack" but Tedford did represent defendant's belting to be as good as the best. It might be true that the name of the grade of goods bought by plaintiff was not mentioned, but we think his own admissions show beyond controversy that he knew he was not buying the best grade sold by defendant and, therefore, not the best grade sold in that district. He admits he told the manager of the Joplin office when he went there to negotiate for the purchase of the goods that "I am building the mill to sell, going to sell and don't care to put in an extra high priced belt. The ordinary grade is all I want." He was asked if he did not see a price list of the Day Rubber Company and replied, "I don't know whether I did or not, all the price lists are the same of different houses." Further he was asked "Were you not looking for the cheapest belt you could find," and answered, "I was not, I was looking for the best belt for the cheapest price." "Q. You took the belt offered at the cheapest price? A. Supposing I was getting a first-class belt. What I meant was I did not want to put in anything better than a standard belt."

With admissions such as these before us, we find no room for any other reasonable conclusion than that plaintiff knew defendant sold different grades and deliberately and knowingly bought a cheaper grade than the best. He is now endeavoring to secure damages from defendant because he found that a second class article would not give first-class service. He received what he bought and what he intended to buy, and his effort to distort the general statement of the agent that that the goods sold by his principal were as good as any

sold in that market into a representation that the grade of goods listed and sold as second grade was equal to the best grade is too palpably without merit to receive serious consideration. He has no case for two reasons: First, the representations of defendant's agent as detailed by the plaintiff do not purport to refer to the grade of belting bought by plaintiff and, consequently, there were no misrepresentations concerning that grade and, second, even if this were not so, since defendant's own admissions demonstrate that he knew the goods he bought were not of the first grade, he has failed to prove one of the essential elements of his cause of action, namely, that he relied and acted on the false representations he claims were made.

The judgment is reversed. All concur.